# VIRGIN ATLANTIC AIRWAYS LIMITED

Company number: 01600117

(the Company)

**Minutes of a meeting of the directors
of the Company held by telephone
on 27 July 2020 at 5 p.m.**

_____

**Present:**
Mr P. Norris (in the chair)
Mr G. McCallum
Mr I. Woods
Mr T. Mackay
Mr S. Weiss
Mr G. Hauenstein
Mr S. Sear
Mr D. James

**In attendance:**

Mr E. Griffith (*Partner – Restructuring, Allen & Overy LLP*)
Mr M. Jacovides (*Partner – Banking, Allen & Overy LLP*)
Ms C. Coppel (*Partner – Corporate, Allen & Overy LLP*)
Mr N. Clark (*Partner – Banking, Allen & Overy LLP*)
Mr M. Moore (*Partner – Banking, Allen & Overy LLP*)
Mr I. de Sousa (*Company Secretary*)
Mr L. Brambilla
Ms H. Boyd-Boland
Mr J. Homerstone

_____

1. **CHAIRPERSON**

    Mr P. Norris was appointed chairperson of the meeting.

2. **APOLOGIES, NOTICE AND QUORUM**

2.1 The chairperson noted that apologies for absence had been received from Mr E. Bastian and Sir R. Branson who would be represented at this meeting by their alternates, Mr D. James and Mr P. Norris respectively.

2.2 The chairperson reported that notice of the meeting had been given to all of the directors in accordance with the Company's articles of association and that a quorum was present.

**VAAL Board Minutes**

3.  **DECLARATIONS OF INTEREST**

3.1   The directors each declared an interest in the business to be considered at the meeting in accordance with section 177 and section 182 of the Companies Act 2006, in particular:

    (a)   in the case of Mr G. Hauenstein, Mr D. James and Mr S. Sear (the **Delta Directors**), an interest in:

        (i)   the Connected Party Plan Creditors under and as defined in the Explanatory Statement;

        (ii)   document 7 as listed in Appendix 1 to these minutes; and

        (iii)   documents 7, 11 and 14 as listed in Appendix 5 to these minutes,

        by virtue of the Delta Directors being representatives of Delta Air Lines, Inc. which:

            (A)   indirectly holds a 49 per cent. stake in the Company; and

            (B)   forms part of the Connected Party Plan Creditors under the Restructuring Plan (defined below) and Explanatory Statement,

        (the **Delta Declared Interests**);

    (b)   in the case of Mr P. Norris, Mr G. McCallum and Mr I. Woods (the **Virgin Directors**), an interest in:

        (i)   the Connected Party Plan Creditors under and as defined in the Explanatory Statement;

        (ii)   document 7 as listed in Appendix 1 to these minutes; and

        (iii)   documents 7, 11 and 14 as listed in Appendix 5 to these minutes,

        by virtue of the Virgin Directors being representatives of Virgin Investments Limited which:

            (A)   indirectly holds a 51 per cent. stake in the Company; and

            (B)   forms part of the Connected Party Plan Creditors under the Restructuring Plan and Explanatory Statement,

        (the **Virgin Declared Interests**);

    (c)   in the case of all directors, an interest in documents 7, 11, 12, 13, 14 and 15 as listed in Appendix 5 to these minutes, by virtue of all directors also being directors of Virgin Atlantic Limited, Virgin Holidays Limited, Virgin Atlantic International Limited and Virgin Travel Group Limited (the **VAL, VHL, VAIL and VTGL Declared Interests**); and

    (d)   in the case of Mr T. Mackay and Mr S. Weiss (the **Executive Directors**), an interest in: documents 1, 5, 7, 13, 14, 15 and 16 as listed in Appendix 5 to these minutes by virtue of the Executive Directors also being directors of Fit Leasing Limited, Virglease (3) Limited, VAA Holdings UK Limited, VAA Holdings Jersey Limited, VA Cargo Limited and Virgin Incoming Services Inc. (the **FLL, Virglease, VAAH UK, VAAH Jersey, VAC and VIS**

**Declared Interests**, and, together with the VAL, VHL, VAIL and VTGL Declared Interests, the **Intra-Group Declared Interests**).

3.2  In relation to the Delta Declared Interests, it was noted that, pursuant to the shareholders' agreement in respect of Virgin Atlantic Limited dated 13 March 2014 (the **Shareholders' Agreement**), the Delta Directors could participate in discussions and vote on the agreements/arrangement listed in paragraph 3.1(a) above insofar as: (i) the Explanatory Statement is being issued by the Company to Virgin Investments Limited as a Connected Party Plan Creditor; and (ii) they concern matters between the Company and Virgin Investments Limited.

3.3  In relation to the Virgin Declared Interests, it was noted that, pursuant to the Shareholders' Agreement, the Virgin Directors could participate in discussions and vote on the agreements/arrangements listed in paragraph 3.1(b) above insofar as: (i) the Explanatory Statement is being issued by the Company to Delta Air Lines, Inc. as a Connected Party Plan Creditor; and (ii) they concern matters between the Company and Delta Air Lines, Inc.

3.4  In relation to the Intra-Group Declared Interests, it was noted that, under article 43.3 of the Company's articles of association, the directors are entitled to be counted in the quorum and vote in respect of the agreements/arrangements listed in paragraphs 3.1(c) and 3.1(d) notwithstanding the Intra-Group Declared Interests.

3.5  The directors each confirmed in relation to themselves that they had no conflict of interest in relation to the business to be considered at the meeting which would constitute a conflict of interest in breach of section 175 or section 182 of the Companies Act 2006 other than those matters which had already been disclosed at paragraph 3.1 above.

4.  **PURPOSE OF THE MEETING**

4.1  The chairperson reported that the business of the meeting was to:

(a)  provide an update on:

(i)  the progress of negotiations with the Company's stakeholders regarding the proposed solvent recapitalisation plan of the Company and its subsidiaries (the **Recapitalisation Plan**); and

(ii)  the restructuring plan with certain creditors of the Company (the **Plan Creditors**) under Part 26A of the Companies Act 2006 (the **Restructuring Plan**);

(b)  consider and approve the entry into (to extent necessary) the documents required for the Convening Hearing scheduled for 4 August 2020 as listed in Appendix 1 and attached at Appendix 2 to these minutes (the **Convening Hearing Documents**);

(c)  consider and approve an application for recognition of the Restructuring Plan in the United States under Chapter 15, Title 11 of the United States Bankruptcy Code (the **Chapter 15 Application**);

(d)  consider and approve the entry into the documentation in relation to the Chapter 15 Application as listed in Appendix 3 and attached at Appendix 4 of these minutes (the **Chapter 15 Documents**);

(e)  consider and approve the appointment of Mr S. Weiss as foreign representative of the Company for the purposes of Chapter 15 Application; and

(f) consider and approve the entry into the recapitalisation documents to which the Company will be a party listed in Appendix 5 and attached at Appendix 6 of these minutes (the **Recapitalisation Documents**).

4.2 The chairperson noted that:

(a) various attendees from Allen & Overy LLP; and

(b) various attendees from the Company's management team,

were in attendance to provide advice and highlight key terms of the Convening Hearing Documents, the Chapter 15 Documents and the Recapitalisation Documents.

5. **DOCUMENTS TABLED**

There were produced to the meeting:

(a) the Convening Hearing Documents;

(b) the Chapter 15 Documents; and

(c) the Recapitalisation Documents,

each of which were initialled by the chairperson for the purpose of identification.

6. **UPDATE ON RECAPITALISATION PLAN AND RESTRUCTURING PLAN**

6.1 The chairperson referred to the board meeting of 13 July 2020 at which the directors approved the draft practice statement letter and authorised a sub-committee of the board to approve the final form of the practice statement letter. The final form of the practice statement letter was signed by the Company on 14 July 2020 and made available to all Plan Creditors via the Company's Information Agent (defined in the Explanatory Statement) on that date. Prior to circulation of the practice statement letter, the Company also executed the Deed Poll (defined in the Explanatory Statement).

6.2 Mr E. Griffith noted that since 14 July 2020 the support agreements have all been signed by sufficient creditors such that they have all become effective. Furthermore, since all finance lessors and related creditors signed the relevant support agreements, it is no longer necessary to include them in the Restructuring Plan. Accordingly, on 20 July 2020, the Company (acting by the sub-committee referred to above) issued an addendum to the practice statement letter informing Plan Creditors that all of the support agreements are effective and that the finance lessors and related creditors would no longer be part of the Restructuring Plan. Instead, their arrangements will be implemented outside of the Restructuring Plan as part of the wider Recapitalisation Plan.

6.3 This addendum to the practice statement letter also informed Plan Creditors of certain changes to the list of Trade Plan Creditors in the practice statement letter discovered after 14 July 2020. In addition, following feedback from Trade Plan Creditors, it was decided to change the cut-off date at which the reduction and deferrals to be implemented pursuant to the Restructuring Plan would apply to Trade Plan Creditors' claims against the Company from 21 August 2020 to 1.30 pm on 14 July 2020. This was intended to mitigate termination risk during the period prior to the Recapitalisation Effective Date and will not have a material impact on the forecast cashflows or business plan.

6.4 Mr T. Mackay also gave an update on a briefing call to which all Trade Plan Creditors were invited on 21 July 2020. The purpose of this call was to address some common queries that Trade Plan

Creditors has been raising in connection with the Restructuring Plan, encourage Trade Plan Creditors to remain supportive of the Company, and help them navigate the unfamiliar legal process.

**7.    DISCUSSION OF THE CONVENING HEARING DOCUMENTS**

7.1    Mr E. Griffith explained that the next step in the Restructuring Plan is to formally commence proceedings with respect to the Restructuring Plan in the High Court of England and Wales (the **Court**) by:

(a)    filing a claim form with the Court on 30 July 2020; and

(b)    filing the relevant Convening Hearing Documents with the Court on 30 July 2020,

to obtain an order for directions as to the convening and conduct of the Plan Meetings (as defined in the Explanatory Statement) (the **Convening Order**).

7.2    Mr E. Griffith explained that:

(a)    the Explanatory Statement will be made available to all Plan Creditors on the day following the Convening Hearing (assuming the Court issues the Convening Order) and is required to be made available by the Company pursuant to the Companies Act 2006 in order to provide Plan Creditors with sufficient information to enable them to make a decision as to whether or not to vote in favour of the Restructuring Plan at the relevant Plan Meeting; among other things it:

(i)    describes the Group, its financial arrangements and certain financial information and the background to and events leading up to the launch of the Restructuring Plan;

(ii)    sets out any material interests of the directors of the Company and the effect of those interests on the Restructuring Plan;

(iii)    sets out, in more detail than the practice statement letter, the nature of the transactions contemplated by the Restructuring Plan as well as the wider Recapitalisation Plan;

(iv)    outlines the mechanics to implement the Restructuring Plan (which are specifically set out in Restructuring Plan Document (as defined in the Explanatory Statement) at Part D of the Explanatory Statement); and

(v)    describes what the Company considers the "relevant alternative" to the Restructuring Plan is; that is, what will happen if the Restructuring Plan is not approved and sanctioned by the Court by reference to the Illustrative Recoveries Analysis (as defined in the Explanatory Statement) prepared by Alvarez & Marsal Europe LLP, which will be appended to the Explanatory Statement;

(b)    the Illustrative Recoveries Analysis is a financial model that estimates the illustrative recoveries for the Plan Creditors in the event that the Restructuring Plan is not approved and sanctioned by the Court and the Company files for administration. Based on the Illustrative Recoveries Analysis, the Explanatory Statement provides that the Company's good faith view is that the relevant alternative in the event that the Restructuring Plan is unsuccessful is administration;

    (c)    the witness statement of Mr S. Weiss and Mr. V. Parzyjagla of Lucid Issuer Services Limited (**Lucid**) are made in support of the Company's application to the Court for the Convening Order. The witness statement of Mr S. Weiss includes, among other matters, an overview of the Restructuring Plan and the class composition of Plan Creditors, the background to and reasons for the Recapitalisation Plan and additional detail as to the Company's cashflows thorough to September 2020 in support of the timeline requested. The witness statement of Lucid (as Information Agent under the Explanatory Statement) covers the dissemination of the practice statement letter issued by the Company on 14 July 2020; and

    (d)    the Company is required to provide:

        (i)    the Court with the relevant Convening Hearing Documents in order to formally commence proceedings with respect to the Restructuring Plan with the Court to obtain the Court Order; and

        (ii)    each Plan Creditor with a copy of the notice summoning the Plan Meetings accompanied by the Explanatory Statement if the Court grants the Convening Order.

## 8. DISCUSSION OF THE CHAPTER 15 APPLICATION AND CHAPTER 15 DOCUMENTS

8.1    Mr E. Griffith explained that, in parallel with the Restructuring Plan, the Company intends to file the Chapter 15 Application as the Plan Creditors are based in a variety of different jurisdictions, including the United States.

8.2    Mr E. Griffith noted that:

    (a)    the purpose of the Chapter 15 Application is:

        (i)    to seek recognition of the Restructuring Plan in the United States; and

        (ii)    to promote cooperation and communication between US courts and the Court;

    (b)    the Company would be required to file the Chapter 15 Documents with the United States Bankruptcy Court for the Southern District of New York; and

    (c)    if the Restructuring Plan is approved by the Plan Creditors and sanctioned by the Court, the Company expects that the Restructuring Plan and its effects will be recognised in the United States shortly after the Sanction Hearing scheduled for 2 September 2020.

8.3    Mr E. Griffith also explained that Chapter 15 of the US Bankruptcy Code requires the appointment of a foreign representative in connection with the Chapter 15 Application. The purpose of a foreign representative is to, among other things:

    (a)    file a petition for recognition; and

    (b)    seek additional relief from the US bankruptcy court or from other US state and federal courts.

**9.    DISCUSSION OF THE RECAPITALISATION DOCUMENTS**

9.1    The chairperson noted that negotiations with stakeholders had continued to take place since the previous board meeting and that the Recapitalisation Documents to which the Company is a party with the Plan Creditors had been substantially agreed with the relevant stakeholders.

9.2    Mr E. Griffith explained that the Recapitalisation Documents will be appended to, or made available to Plan Creditors alongside, the Explanatory Statement and reminded the directors that the Explanatory Statement and these Recapitalisation Documents are expected to be filed with the Court on 30 July 2020 as noted above in section 7.

9.3    Mr E. Griffith further explained that each Recapitalisation Document is summarised in the Explanatory Statement and referred the directors to the relevant sections in the Explanatory Statement.

9.4    Mr E. Griffith noted that the Amex support agreement is not required to be filed with the Court and explained that the Company was aiming to have it finalised and signed ahead of the Court filing on 30 July 2020.

**10.    DIRECTORS' CONFIRMATIONS AND CHAIRPERSON'S PROPOSALS**

10.1    Each director confirmed that, having taken all reasonable care to ensure that this was the case:

(a)    he had read the Convening Hearing Documents, the Chapter 15 Documents and the Recapitalisation Documents;

(b)    he had made or procured the making of all reasonable enquiries or was otherwise satisfied that all reasonable enquiries had been made to confirm and verify all the information contained in the Convening Hearing Documents, the Chapter 15 Documents and the Recapitalisation Documents (and all inferences which a reader may reasonably draw from it);

(c)    the Explanatory Statement contained all information, within his knowledge or which it would be reasonable for him to obtain by making enquiries, required to comply with Part 26A of the Companies Act 2006; and

(d)    all the information contained in the Convening Hearing Documents, the Chapter 15 Documents and the Recapitalisation Documents was true and accurate in all material respects and not misleading (whether by misstatement or omission).

10.2    The directors also considered:

(a)    the legal advice given to the Company in respect of the Restructuring Plan and Recapitalisation Plan by Allen & Overy LLP as the Company's external legal counsel;

(b)    the financial advice given to the Company in respect of the Restructuring Plan and Recapitalisation Plan by Houlihan Lokey EMEA, LLP as the Company's external financial advisers; and

(c)    the restructuring, insolvency and contingency planning advice given to the Company in respect of the Restructuring Plan and Recapitalisation Plan by Alvarez & Marsal Europe LLP.

**VAAL Board Minutes**

10.3 The chairperson proposed that the Company:

(a) approve and, to the extent necessary, enter into the Convening Hearing Documents, the Chapter 15 Documents and the Recapitalisation Documents;

(b) approve and file the Chapter 15 Documents with the United States Bankruptcy Court for the Southern District of New York; and

(c) appoint Mr S. Weiss (or, in his absence, an alternative agreed by the directors of the Company) as the foreign representative of the Company for the purposes of the Chapter 15 Application; and

10.4 The directors considered that: (a) the Convening Hearing Documents; (b) the Chapter 15 Application; (c) the Chapter 15 Documents; (d) the appointment of Mr S. Weiss as foreign representative of the Company; and (e) the Recapitalisation Documents would promote the success of the Company for the benefit of the members as a whole, having regard to the relevant factors set out in section 172 of the Companies Act 2006 including:

(a) the likely consequences in the long term;

(b) the interests of the Company's employees;

(c) the need to foster the Company's business relationships with the Plan Creditors;

(d) the impact of the Company's operations on the community and the environment;

(e) the desirability of the Company maintaining a reputation for high standards of business conduct; and

(f) the need to act fairly as between the members of the Company,

and also concluded that: (a) the Convening Hearing Documents; (b) the Chapter 15 Application; (c) the Chapter 15 Documents; (d) the appointment of Mr S. Weiss as foreign representative of the Company; and (e) the Recapitalisation Documents were in the best interests of all stakeholders, including the Plan Creditors.

**11. RESOLUTIONS**

After due consideration, **IT WAS RESOLVED THAT**:

(a) the Convening Hearing Documents be and hereby are approved;

(b) the Chapter 15 Application be and hereby is approved;

(c) the Chapter 15 Documents be and hereby are approved;

(d) the Recapitalisation Documents be and hereby are approved;

(e) all of the directors be and are hereby authorised to sign on the Company's behalf (if required) the Convening Hearing Documents, the Chapter 15 Documents and the Recapitalisation Documents with any such amendments as any of the directors may in their absolute discretion reasonably deem necessary or desirable;

(f) any one director or the secretary be authorised to circulate the notice of the Plan Meetings, the Explanatory Statement and the Recapitalisation Documents to each Plan Creditor if the Convening Order is granted by the Court;

(g) Mr S. Weiss (or, in his absence an alternative agreed by the directors of the Company) be and hereby is approved and appointed as the foreign representative of the Company in connection with the Chapter 15 Application; and

(h) any one director (or, in the case of a deed, any director in the presence of a witness who attests the signature or any two directors or any one director and the secretary) be authorised to sign on the Company's behalf all other documents, contracts, deeds, certificates or things lawfully required and to do or cause to be done all such acts and things which any director may in his absolute discretion reasonably deem necessary or desirable in connection with: (i) the Convening Hearing Documents; (ii) the Chapter 15 Documents; (iii) the appointment of Mr S. Weiss as foreign representative of the Company; (iv) the Chapter 15 Application; and (v) the Recapitalisation Documents, subject to obtaining in each case, if required, any relevant shareholder consent;

12. **FILING**

    **IT WAS RESOLVED THAT:**

    (a) the secretary be instructed to arrange for the relevant Convening Hearing Documents to be filed with the Court in order to formally commence proceedings with respect to the Restructuring Plan in the Court; and

    (b) Mr S. Weiss be authorised to file the Chapter 15 Documents and supporting documents with the United States Bankruptcy Court for the Southern District of New York in connection with the Chapter 15 Application.

13. **CLOSE OF MEETING**

    The meeting then ended.



…………                                …………….

Mr P. Norris

Chairperson

# APPENDIX 1

# CONVENING HEARING DOCUMENTS LIST

Please refer to the Documents List at Appendix 1 in the "*Project Spring – Board Meetings – 27 July 2020 – Documents Pack*"

**VAAL Board Minutes**

# APPENDIX 2

# CONVENING HEARING DOCUMENTS

Please refer to the Documents at Appendix 2 in the "*Project Spring – Board Meetings – 27 July 2020 – Documents Pack*"

# APPENDIX 3

# CHAPTER 15 DOCUMENTS LIST

Please refer to the Documents List at Appendix 3 in the "*Project Spring – Board Meetings – 27 July 2020 – Documents Pack*"

# APPENDIX 4

# CHAPTER 15 DOCUMENTS

Please refer to the Documents at Appendix 4 in the "*Project Spring – Board Meetings – 27 July 2020 – Documents Pack*"

**VAAL Board Minutes**

# APPENDIX 5

# RECAPITALISATION DOCUMENTS LIST

Please refer to the Documents List at Appendix 5 in the "*Project Spring – Board Meetings – 27 July 2020 – Documents Pack*"

**VAAL Board Minutes**

# APPENDIX 6

## RECAPITALISATION DOCUMENTS

Please refer to the Documents at Appendix 6 in the "*Project Spring – Board Meetings – 27 July 2020 – Documents Pack*"