Ken Coleman
Jonathan Cho
Joseph Badtke-Berkow
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone:     (212) 610-6300
Facsimile:     (212) 610-6399

*Counsel to Shai Weiss, as the Foreign Representative of*
*Virgin Atlantic Airways Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| VIRGIN ATLANTIC AIRWAYS LIMITED,[1] | Case No. 20-_____ (___) |
| Debtor in a Foreign Proceeding. | |

**MEMORANDUM OF LAW IN SUPPORT OF VERIFIED PETITION FOR**
**RECOGNITION OF FOREIGN PROCEEDING AND**
**MOTION FOR ANCILLARY RELIEF**

---

[1]     The last four digits of the United States Tax Identification Number, or similar foreign identification number, as applicable, for Virgin Atlantic Airways Limited are 3123.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

JURISDICTION AND VENUE ..............................................................................................3

BACKGROUND ......................................................................................................................3

ARGUMENT ...........................................................................................................................4

    A.    VAAL Meets the General Eligibility Requirements of Section 109(a) ...................4

    B.    The English Proceeding is Entitled to Recognition as  Foreign Main Proceeding ...5

        i.    The English Proceeding is a "Foreign Proceeding" ......................................... 6

        ii.    The English Proceeding is a "Foreign Main Proceeding" .............................. 9

        iii.    This Case Was Commenced by VAAL's authorized "Foreign Representative" ................................................................................................. 10

        iv.    This Case Was Properly Commenced under Chapter 15 of the Bankruptcy Code ........................................................................................... 11

        v.    The English Proceeding Should be Recognized as Foreign Main Proceeding .................................................................................................... 12

    C.    Recognition and Enforcement of the Sanction Order and the Plan in the United States Pursuant to Section 1521 of the Bankruptcy Code Is Proper .....................13

        i.    Just Treatment of All Holders of Claims Against or Interests in the Debtor's Property ........................................................................................ 15

        ii.    Protection of Claim Holders in the United States Against Prejudice and Inconvenience in the Processing of Claims in the Foreign Proceeding ......... 17

        iii.    Distribution of Proceeds Substantially in Accordance with the Bankruptcy Code ........................................................................................... 18

        iv.    The General Balancing Test Weighs in Favor of Granting Relief ................ 18

    D.    Enforcement of the Plan Is Also Proper under Section 1507 ..................................19

    E.    Enforcement of the Plan is Consistent with Principles of Comity .........................22

    F.    The Relief Requested by the Chapter 15 Petition Is Consistent with United States Public Policy and Policy Behind the Bankruptcy Code .........................................25

CONCLUSION .......................................................................................................................28

## TABLE OF AUTHORITIES

**PAGE(S)**

### CASES

*Ad Hoc. Grp. of Noteholders v. Vitro, S.A.B. de C.V. (In re Vitro, S.A.B. de C.V.)*,
470 B.R. 408 (N.D. Tex. 2012), *aff'd*, 701 F.3d 1031 (5th Cir. 2012), *cert. dismissed*, 569 U.S. 944 (2013) ...................................................................................11

*In re Aerovias Nacionales de Colombia S.A. (In re Avianca)*,
303 B.R. 1  (Bankr. S.D.N.Y. 2003)...................................................................................4

*In re AJW Offshore, Ltd.*,
488 B.R. 551 (Bankr. E.D.N.Y. 2013)...............................................................................14

*In re Artimm, S.r.L.*,
335 B.R. 149 (Bankr. C.D. Cal. 2005)...............................................................................15

*In re Atlas Shipping A/S*,
404 B.R. 726 (Bankr. S.D.N.Y. 2009)........................................................................ *passim*

*In re Avanti Commc'ns Group Plc*,
582 B.R. 603 (Bankr. S.D.N.Y. 2018)........................................................................ *passim*

*In re B. Endeavour Shipping Co. Ltd.*,
Case No. 15-10246-REG (Bankr. S.D.N.Y. Mar. 10, 2015) ......................................9

*In re B.C.I. Fins. Pty Ltd.*,
No. 17-11266 (SHL), 2018 WL 1973723 (Bankr. S.D.N.Y. Apr. 24, 2018) ...........4

*In re Bd. of Dirs. of Multicanal S.A.*,
307 B.R. 384 (Bankr. S.D.N.Y. 2004)...............................................................................24

*In re Bd. of Dirs. of Telecom Arg., S.A.*,
528 F.3d 162 (2d Cir. 2008)...............................................................................15, 23

*In re Bd. of Dirs. of Telecom Arg.*,
S.A., No. 05- 17811 (BRL), 2006 WL 686867 (Bankr. S.D.N.Y. Feb. 24, 2006) .........................................................................................................................21

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
374 B.R. 122 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008) .......12

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
389 B.R. 325 (S.D.N.Y. 2008)...............................................................................20, 21

*Canada S. Ry. Co. v. Gebhard*,
109 U.S. 527 (1883)...............................................................................23, 27

*In re Cell C Proprietary Ltd.*,
   571 B.R. 542 (Bankr. S.D.N.Y. 2017) ...................................................................22

*In re Compania Mexicana de Aviacion, S.A. de C.V.*,
   Case No. 10-14182 (MG) (Bankr. S.D.N.Y. Nov. 8, 2010) ....................................11

*Cornfeld v. Investors Overseas Servs., Ltd.*,
   471 F. Supp. 1255 (S.D.N.Y. 1979)........................................................................26

*CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V.*,
   482 B.R. 96 (Bankr. S.D.N.Y. 2012) ......................................................................14

*In re Culmer*,
   25 B.R. 621 (Bankr. S.D.N.Y. 1982) ...............................................................15, 21

*Drawbridge Special Opps. Fund LP v. Barnet (In re Barnet)*,
   737 F.3d 238 (2d Cir. 2013).....................................................................................4

*In re ENNIA Caribe Holding N.V.*,
   No. 18-12908 (MG) 2019 WL 365749 (Bankr. S.D.N.Y. Jan. 29, 2019) ...............15

*GMAM Inv. Funds Tr. I v. Globo Comunicacoes e Partipacoes S.A. (In re Globo
   Comunicacoes e Partipacoes S.A.)*,
   317 B.R. 235 (S.D.N.Y. 2004)..................................................................................4

*In re Grant Forest Prods., Inc.*,
   440 B.R. 616 (Bankr. D. Del. 2010) .......................................................................19

*Hilton v. Guyot*,
   159 U.S. 113 (1895)................................................................................................24

*In re Ionica, PLC*
   241 B.R. 829 (Bankr. S.D.N.Y. 1999).....................................................................18

*In re Ionosphere Clubs, Inc.*,
   922 F.2d 984 (2d Cir. 1990)..............................................................................25, 26

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
   412 F.3d 418 (2d Cir. 2005).....................................................................................26

*Krys v. Official Comm. of Unsecured Creditors of Refco Inc. (In re SphinX, Ltd.)*,
   371 B.R. 10 (S.D.N.Y. 2007).......................................11*In re Metcalfe & Mansfield Alt. Inv.*,
   421 B.R. 685 (Bankr. S.D.N.Y. 2010) ..............................................................21, 26

*Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*,
   714 F.3d 127 (2d Cir. 2013)......................................................................................9

*In re OIC Run-Off Ltd. & London & Overseas Ins. Co. Ltd.*,
    Case No. 15- 13054-SCC (Bankr. S.D.N.Y. Jan. 11, 2016) ......................................8

*In re Olinda Star Ltd.*,
    614 B.R. 28 (Bankr. S.D.N.Y. 2020) .....................................................................21

*In re Qimonda AG Bankr. Litig.*,
    433 B.R. 547 (E.D. Va. 2010).................................................................................14

*In re Rede Energia S.A.*,
    515 B.R. 69 (Bankr. S.D.N.Y. 2014) ......................................................................22

*Riley v. Kingsley Underwriting Agencies, Ltd.*,
    969 F.2d 953 (10th Cir. 1992) ................................................................................24

*RSM Richter Inc. v. Aguilar (In re Ephedra Prods. Liab. Litig.)*,
    349 B.R. 333 (S.D.N.Y. 2006)................................................................................26

*In re Sino-Forest*,
    501 B.R.655 (S.D.N.Y. 2013).................................................................................25

*SNP Boat Serv. S.A. v. Hotel Le St. James*,
    483 B.R. 776 (S.D. Fla. 2012) ...............................................................................14

*Society of Lloyd's v. Reinhart*,
    402 F.3d 982 (10th Cir. 2005) ................................................................................25

*In re SPhinX, Ltd.*,
    351 B.R. 103 (Bankr. S.D.N.Y. 2006) *aff'd*, *Krys v. Official Comm. of
    Unsecured Creditors of Refco Inc.* (*In re SphinX, Ltd.*), 371 B.R. 10 (S.D.N.Y.
    2007) .....................................................9, 11*In re Standing Order of Reference Re: Title 11*,
    12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) (Preska, C.J.) ...........................................3

*In re Syncreon Auto. (UK) Ltd.*,
    Case No. 19-11702-BLS (Bankr. D. Del. Sept. 11, 2019).......................................8

*In re Towergate Fin. Plc*,
    Case No. 15-10509-SMB (Bankr. S.D.N.Y. Mar. 27, 2015).....................................9

*In re Treco*,
    240 F.3d 148 (2d Cir. 2001)....................................................................................15

*In re U.S. Steel Canada Inc.*,
    571 B.R. 600 (Bankr. S.D.N.Y. 2017) ...................................................................22

*Victrix S.S. Co. v. Salen Dry Cargo A.B.*,
    825 F.2d 709 (2d Cir. 1987)....................................................................................23

*In re Vitro S.A.B. de CV*,
    701 F.3d 1036 (5th Cir. 2012) ...........................................................................26

*In re YH Ltd.*,
    Case No. 16-12262-SCC (Bankr. S.D.N.Y. Sept. 8, 2016) .......................................8

## STATUTES

11 U.S.C. § 103(a) ...........................................................................................4

11 U.S.C. § 105(a) ...........................................................................................1

11 U.S.C. § 101(23) .................................................................................5, 6, 9

11 U.S.C. § 101(24) ...............................................................................5, 10, 11

11 U.S.C. § 109(a) ...............................................................................4, 5, 13

11 U.S.C. § 304 ..............................................................................................18

11 U.S.C. § 304(c) ...........................................................................................5

11 U.S.C. § 1129 ............................................................................................18

11 U.S.C. § 1129(a)(7)(A) ................................................................................16

11 U.S.C § 1501 ......................................................................................*passim*

11 U.S.C. § 1501(a) ........................................................................................28

11 U.S.C. § 1502 .............................................................................................9

11 U.S.C. § 1502(3) .........................................................................................6

11 U.S.C. § 1502(4) ...............................................................................5, 9, 10

11 U.S.C. § 1504 ...............................................................................1, 3, 11, 13

11 U.S.C. § 1506 ...........................................................................................26

11 U.S.C. § 1507( ..............................................................................1, 3, 20, 21

11 U.S.C. § 1507(a) ........................................................................................20

11 U.S.C. § 1507(b) ...........................................................................20, 21, 22

11 U.S.C. § 1509 .............................................................................................3

11 U.S.C. § 1509(a) ...................................................................................1, 13

11 U.S.C. § 1515 ............................................................................................... *passim*

11 U.S.C. § 1515(a) ...................................................................................................11

11 U.S.C. § 1515(b) ...................................................................................................11

11 U.S.C. § 1516(a) ................................................................................................8, 11

11 U.S.C. § 1516(b) ...................................................................................................12

11 U.S.C. § 1516(c) ...................................................................................................10

11 U.S.C. § 1517 .....................................................................................................1, 3

11 U.S.C. § 1517(a) .............................................................................................5, 6, 10

11 U.S.C. § 1517(b)(1) .................................................................................................9

11 U.S.C. § 1519 .......................................................................................................12

11 U.S.C. § 1520 ....................................................................................................3, 13

11 U.S.C. § 1521 .............................................................................................. *passim*

11 U.S.C. § 1521(a) ..............................................................................................13, 14

11 U.S.C. § 1521(a)(7) ................................................................................................<u>13</u>

11 U.S.C. § 1522(a) ...................................................................................................14

28 U.S.C. § 157 ...........................................................................................................3

28 U.S.C. § 157(b)(2)(P) .............................................................................................3

28 U.S.C. § 1334 .........................................................................................................3

28 U.S.C. § 1410 .........................................................................................................3

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA)
   (Pub.L. 109–8, 119 Stat. 23, enacted Apr. 20, 2005) .............................................18

Companies Act 2006 ........................................................................................1, 17, 19, 22

Companies Act 2006 Part 26 ................................................................................ *passim*

Companies Act 2006 Part 26A .............................................................................. *passim*

Corporate Insolvency and Governance Act 2020 ...........................................................8

Trust Indenture Act of 1937, S. 2344, 75th Cong. § 7(m)(5) (1st Sess.1937) (1937
    Senate Hearings at 12) ............................................................................................23

### OTHER AUTHORITIES

8 Richard Levin & Henry J. Sommer COLLIER ON BANKRUPTCY ¶ 1501.03
    (16th ed. 2018) ........................................................................................................6

8 Richard Levin & Henry J. Sommer COLLIER ON BANKRUPTCY ¶ 1522.01
    (16th ed. 2018) ......................................................................................................14

Fed. R. Bankr. P. 1007(a)(4) ..............................................................................12, 13

Fed. R. Bankr. P. 7007.1 .........................................................................................12

H.R. Rep. 109-31(I), 109 Cong., Sess. 2005, *reprinted in* 2005 U.S.C.C.A.N. 88 ..................5, 18

UNCITRAL Model Law, European Council Regulation (EC) No 1346/2000 of 29
    May 2000 ..................................................................................................................9

Shai Weiss is the duly-authorized foreign representative (the **Foreign Representative**) of Virgin Atlantic Airways Limited (**VAAL**), a private company limited by shares that is the subject of a proceeding (the **English Proceeding**) under Part 26A of the Companies Act 2006 (as amended or re-enacted from time to time, the **Companies Act**) pending before the High Court of Justice of England and Wales (the **English Court**).

The Foreign Representative commenced this chapter 15 case ancillary to the English Proceeding on August 4, 2020 (the **Petition Date**), by filing an official form B401 *Chapter 15 Petition for Recognition of a Foreign Proceeding* and a *Verified Petition for Recognition of Foreign Proceeding and Motion for Ancillary Relief* (the **Verified Petition** and, together with the official form B401 petition, the **Chapter 15 Petition**),[2] with accompanying documentation, pursuant to sections 1504 and 1515 of title 11 of the United States Code (the **Bankruptcy Code**) seeking the entry of an order: (i) recognizing the English Proceeding as a "foreign main proceeding" under section 1517 of the Bankruptcy Code; (ii) subject to the English Court's entry of a sanction order (the **Sanction Order**) sanctioning VAAL's restructuring plan (the **Plan**), giving full force and effect in the United States to the Sanction Order and the Plan pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code; and (iii) granting related relief.

The Foreign Representative respectfully files this Memorandum of Law in support of the Chapter 15 Petition.

## PRELIMINARY STATEMENT

VAAL, together with its indirect parent Virgin Atlantic Limited and their various subsidiaries (collectively, the **Group**), have negotiated an in-principle agreement with major stakeholders for a consensual recapitalization to de-lever the Group's balance sheet and

---

[2]    Capitalized terms used but not defined herein have the meanings assigned to them in the Chapter 15 Petition.

immediately position it for sustainable long-term growth (the **Recapitalization**). The Recapitalization is essential to the ability of the Group to reposition itself to not only survive the exigent threats posed by the COVID-19 global pandemic but to thrive once the immediate global health crisis passes. A key component of the Recapitalization is the Plan, by which VAAL seeks authority to amend a revolving credit facility and certain operating lease arrangements, arrangements with trade creditors, and arrangements with affiliates in order to, among other things, reduce and/or re-schedule its payment obligations thereunder. To ensure the efficient and effective administration of the English Proceeding and to implement the Recapitalization pursuant to authority to be granted to VAAL under the Plan, the English Proceeding needs to be recognized, and the Sanction Order and the Plan need to be binding and enforceable, in the United States. Among the conditions precedent to the implementation of the Recapitalization, including the proposed amendments to the agreements between VAAL and the Plan Creditors, is the entry of an order in this case giving full force and effect to the Plan and Sanction Order in the United States. Further, recognition of the English Proceeding and enforcement of the Sanction Order and Plan are necessary so that VAAL's creditors and members are precluded from taking any action in the United States that may frustrate the objectives of the Plan and the Recapitalization. Chapter 15 of the Bankruptcy Code is designed to, *inter alia*, protect and maximize the value of a foreign debtor's assets and to facilitate the rehabilitation of financially distressed businesses. As such, the Foreign Representative commenced this case to obtain recognition of the English Proceeding and the enforcement of the Sanction Order and the Plan in the United States. Such relief will enable VAAL to achieve the objectives of the Plan by (a) ensuring that the terms of the Plan are binding, valid, and enforceable in the United States, (b) ensuring that parties subject to the Plan are treated in the

United States consistent with the terms of the Plan, and (c) minimizing the risk of litigation in the United States that might disrupt the effective administration of the Plan.

For the reasons set forth below and in the Chapter 15 Petition and the documents filed in support of the Chapter 15 Petition, the relief sought by the Chapter 15 Petition should be granted.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, 11 U.S.C § 1501, and the *Amended Standing Order of Reference of the United States District Court for the Southern District of New York*, dated January 31, 2012, Reference M-431. *See In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P). Venue is proper in this District pursuant to 28 U.S.C. § 1410. The statutory predicates for the relief requested in the Chapter 15 Petition, as discussed herein, are sections 105(a), 1504, 1507, 1509, 1515, 1517, 1520, and 1521 of the Bankruptcy Code.

## BACKGROUND

1.      For a description of relevant English law, the Court is respectfully referred to the *Declaration of Jennifer Marshall as English Counsel in Support of (i) Verified Petition for Recognition of Foreign Proceeding and Motion for Ancillary Relief and (ii) Ex Parte Application for Temporary Restraining Order and Motion for Provisional Relief* dated August 4, 2020, and filed contemporaneously herewith (the **Marshall Declaration**). For a detailed description of VAAL's business, corporate organization, capital structure, the circumstances leading to the English Proceeding, and the Plan, the Court is respectfully referred to: (i) the Chapter 15 Petition, the factual portions of which the Foreign Representative incorporates by reference herein as if fully set forth in this Memorandum of Law; and (ii) the *Explanatory Statement in Relation to a Restructuring Plan* (the **Explanatory Statement**) attached as Exhibit C to the Marshall

3

Declaration. A copy of the Plan is attached as Part D to the Explanatory Statement. Unpublished

or foreign decisions and orders cited in this Memorandum of Law are annexed to the Declaration

of Ken Coleman dated August 4, 2020, which is being filed contemporaneously herewith (the

**Coleman Declaration**).

## ARGUMENT

### A.    VAAL Meets the General Eligibility Requirements of Section 109(a)

2.      Section 103(a) of the Bankruptcy Code provides that chapter 1, including section

109(a), applies in a case under chapter 15. 11 U.S.C. 103(a). Section 109(a), in turn, provides that

"only a person that resides or has a domicile, a place of business, or property in the United States,

or a municipality, may be a debtor under [the Bankruptcy Code]." 11 U.S.C. § 109(a). VAAL must

therefore have a domicile, a place of business, or property in the United States to be eligible for

relief under chapter 15. *See also Drawbridge Special Opps. Fund LP v. Barnet (In re Barnet)*, 737

F.3d 238 (2d Cir. 2013).   Section 109(a)'s property requirement may be "satisfied by even a

minimal amount of property located in the United States." *See, e.g., In re B.C.I. Fins. Pty Ltd.*, No.

17-11266 (SHL), 583 B.R. 288, 294; *GMAM Inv. Funds Tr. I v. Globo Comunicacoes e

Partipacoes S.A. (In re Globo Comunicacoes e Partipacoes S.A.)*, 317 B.R. 235, 249 (S.D.N.Y.

2004) (stating that courts have repeatedly found that there is "'virtually no formal barrier' to having

federal courts adjudicate foreign debtors' bankruptcy proceedings") (citing *In re Aerovias

Nacionales de Colombia S.A. (In re Avianca)*, 303 B.R. 1, 9 (Bankr. S.D.N.Y. 2003)).

3.      VAAL has US bank accounts, engineering assets, and employees across a number

of states, with the majority of its US operations and assets in New York, Georgia, Florida,

California, and Nevada. Chapter 15 Petition ¶ 22. The largest proportion of its property and

employees are located or based in New York, and it also maintains an office in Atlanta, Georgia

for the performance of a number of administrative functions. *Id*. VAAL therefore meets the general

eligibility requirements of section 109(a) of the Bankruptcy Code because it has both places of business and property in the United States.

**B.      The English Proceeding is Entitled to Recognition as  Foreign Main Proceeding**

4.      Section 1517(a) of the Bankruptcy Code provides, in pertinent part, that:

> [s]ubject to section 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if—(1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign non-main proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a).

5.      An order recognizing the English Proceeding should therefore be entered if: (i) the English Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code; (ii) the English Proceeding is either a "foreign main proceeding" within the meaning of section 1502(4) or a "foreign nonmain proceeding" within the meaning of section 1502(5); (iii) the Foreign Representative is a "foreign representative" within the meaning of section 101(24) and a "person" within the meaning of section 101(41); and (iv) the Chapter 15 Petition meets the requirements of section 1515. *Id.*; *see also* H.R. Rep. 109-31(I), 109 Cong., Sess. 2005, *reprinted in* 2005 U.S.C.C.A.N. 88, 169 at 175 (noting that the "decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings of the sort previously mandated by section 304(c) of the Bankruptcy Code. The requirements of this section, which incorporates the definitions in section 1502 and sections 101(23) and (24), are all that must be fulfilled to attain recognition"). Because each of the foregoing requirements is satisfied, the Foreign Representative respectfully submits that the Court should enter an order granting recognition to the English Proceeding.

#### i.    The English Proceeding is a "Foreign Proceeding"

6.    The English Proceeding is a "foreign proceeding" and, as such, satisfies the first

condition for entry of an order recognizing such proceeding under Section 1517(a) of the

Bankruptcy Code.  Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

> [a] collective judicial or administrative proceeding in a foreign country, including
> an interim proceeding, under a law relating to insolvency or adjustment of debt in
> which proceeding the assets and affairs of the debtor are subject to control or
> supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). The Bankruptcy Code defines "foreign court" as "a judicial or other authority

competent to control or supervise a foreign proceeding." See 11 U.S.C. § 1502(3).

7.    As described in the Marshall Declaration, it is clear that the English Proceeding

qualifies as a "foreign proceeding" under Section 101(23) of the Bankruptcy Code. The English

Proceeding is pending in England, a constituent member of the United Kingdom. Part 26A of the

Companies Act is a law relating to the adjustment of debt because it allows a company to propose

a restructuring plan to effectuate binding compromises or arrangements, including the

restructuring of its debts and obligations, with all or select classes of its creditors or members.

Marshall Declaration ¶ 12.[3] The English Proceeding is "collective" because, like a case under

Bankruptcy Code, it affects and is for the benefit of various classes of VAAL's creditors and

members, as opposed to a single party, and such creditors and members are entitled to both vote

on the Plan and participate in hearings before the English Court in the English Proceeding.

8 Richard Levin & Henry J. Sommer COLLIER ON BANKRUPTCY ¶ 1501.03 (16th ed. 2018) ("The

---

[3]    Notably, unlike a scheme of arrangement under Part 26, Part 26A imposes additional conditions that must be
satisfied in order for a company to be subject to a restructuring plan, which additional conditions clearly
demonstrate that Part 26A is a law relating to the adjustment to debt. The additional conditions are: (a) the
company has encountered, or is likely to encounter, financial difficulties that are affecting, or will or may
affect, its ability to carry on business as a going concern; and (b) the purpose of the compromise or
arrangement is to eliminate, reduce or prevent, or mitigate the effect of, any of those financial difficulties.
Marshall Declaration ¶ 14.

'collective proceeding' requirement is intended to limit access to chapter 15 to proceedings that benefit creditors generally and to exclude proceedings that are for the benefit of a single creditor."). The English Proceeding is "judicial" because it is supervised by the English Court, which has jurisdiction over proceedings with respect to companies registered in England and Wales under the Companies Act and, like a bankruptcy court in a chapter 11 case, plays an active role in the administration of the proceeding. Marshall Declaration ¶¶ 20-26. The English Court entered an order (the **Convening Order**) authorizing meetings of affected parties to consider approval of the Plan (the **Plan Meetings**). *Id.* ¶¶ 15, 38.[4] The English Court's entry of the Sanction Order—much like a plan confirmation order in a case under chapter 11 of the Bankruptcy Code—will also be required for the Plan to ultimately become valid and binding. *Id.* ¶ 17. The English Court will only enter the Sanction Order after a hearing at which parties in interest will have an opportunity to be heard and, if they so choose, object to the requested relief, and if the English Court is satisfied that the sanction of the Plan is consistent with the sound exercise of its discretion.[5] *Id.* ¶¶ 24-25. The English Court may sanction the Plan unconditionally, may sanction the Plan conditional upon certain modifications or amendments to the Restructuring Plan, or may refuse to sanction the Plan. *Id.* ¶ 25.

8.     Further, section 1516(a) of the Bankruptcy Court entitles the Court to presume that the foreign proceeding is a "foreign proceeding," if the decision commencing the foreign

---

[4]     A true and correct copy of the Convening Order is attached as Exhibit D to the Marshall Declaration.

[5]     As described in the Marshall Declaration, in considering whether sanction of a restructuring plan is appropriate, the English Court may consider the same factors that courts will assess in connection with the sanction of schemes of arrangement under Part 28. Those factors are: (i) whether the provisions of the statute have been complied with; (ii) whether each class was fairly represented by those who attended the meeting; (iii) whether statutory majority in each class are acting bona fide and not coercing the minority to promote interests adverse to the class whom they purport to represent; (iv) whether the arrangement is such as an intelligent and honest person, a member of the class concerned and acting in respect of his interest, might reasonably approve. Marshall Declaration ¶ 25(i)-(iii).

proceeding so indicates. *See* 11 U.S.C. § 1516(a). Here the English Court has, in the Convening Order, declared that the Company's appointment of Mr. Weiss as the Foreign Representative was valid and that he is "authorized to act as [VAAL]'s agent in seeking any relief available to a "foreign representative" under Chapter 15 of the U.S. Bankruptcy Code." Convening Order ¶ 14.

9.      By virtue of the timing of the English Proceeding and the promulgation of the Corporate Insolvency and Governance Act, which added Part 26A to the Companies Act in late June 2020, the English Proceeding is among the first, if not the first, proceeding in which a company seeks to avail itself of the new restructuring plan procedures set forth in Part 26A. Marshall Declaration ¶ 6. Nevertheless, a Part 26A proceeding in respect of a restructuring plan is comparable to a Part 26 proceeding in respect of a scheme of arrangement process and uses many of the same procedural elements, such as the entry of convening and sanction orders by the English Court and the holding of meetings of affected stakeholders.[6] US courts have consistently recognized proceedings regarding schemes of arrangement under Part 26 of the Companies Act as "foreign proceedings" for purposes of chapter 15 of the Bankruptcy Code. *See*, *e.g.*, *In re Syncreon Automotive (UK) Ltd.*, Case No. 19-11702-BLS (Bankr. D. Del.  Sept. 11, 2019) [Dkt. No. 37]; *In re Avanti Commc'ns Grp. Plc*, 582 B.R. 603 (Bankr. S.D.N.Y. 2018); *In re YH Ltd.*, Case No. 16-12262-SCC (Bankr. S.D.N.Y. Sept. 8, 2016) [Dkt. No. 14]; *In re OIC Run-Off Ltd. & London & Overseas Ins. Co. Ltd.*, Case No. 15- 13054-SCC (Bankr. S.D.N.Y. Jan. 11, 2016) [Dkt. No. 18]; *In re Towergate Fin. Plc*, Case No. 15-10509-SMB (Bankr. S.D.N.Y. Mar. 27, 2015) [Dkt. No. 16]; *In re B. Endeavour Shipping Co. Ltd.*, Case No. 15-10246-REG (Bankr. S.D.N.Y. Mar. 10, 2015) [Dkt. No. 10].

---

[6]      A described in more detail in the Marshall Declaration, the substantive and procedural provisions governing restructuring plans under Part 26A were modeled off of the provisions governing schemes of arrangement under Part 26. Marshall Declaration ¶ 12.

10.    Accordingly, the English Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.

### ii.    The English Proceeding is a "Foreign Main Proceeding"

11.    Section 1502(4) of the Bankruptcy Code defines a "foreign main proceeding" as a "foreign proceeding pending in the country where the debtor has the center of its main interests," and section 1517(b)(1) provides that a foreign proceeding shall be recognized "as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests." 11 U.S.C. §§ 1502, 1517(b)(1).

12.    While the Bankruptcy Code does not define "center of its main interests," courts have equated the concept with a debtor's principal place of business, examining factors such as the location of the debtor's headquarters, management, assets, creditors, and/or the law whose jurisdiction would apply to most disputes. *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.*), 714 F.3d 127, 137 (2d Cir. 2013) (quoting *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006)). A debtor's center of main interest should also "correspond to the place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties." *Id*. at 138 (citing guidance from the European enactment of the UNCITRAL Model Law, European Council Regulation (EC) No 1346/2000 of 29 May 2000).

13.    Here, VAAL is incorporated under the laws of England and Wales and its registered offices and headquarters are located in Crawley, England. Chapter 15 Petition ¶¶ 4, 12. The Court may therefore presume that the United Kingdom constitutes VAAL's "center of main interests." 11 U.S.C. § 1516(c). Moreover, the evidence unequivocally supports the statutory presumption. The majority of VAAL's directors, officers, and employees are located in England and Wales. *Id*. ¶ 12. Its principal business is to offer flights from hub airports in the United Kingdom, with the second-largest number of landing slots at Heathrow and the largest number of landing spots at

Manchester. *Id.* ¶ 8. The revolving credit facility, the amendment of which is a key component of the Recapitalization, is governed by English law and the agent and security agent under that agreement is Lloyds Bank Plc, an English bank. *Id.* ¶¶ 14-15. All of the operating lease agreements affected by the Plan, and which pertain to a significant portion of VAAL's fleet of aircraft, are likewise governed by English law. *Id.* ¶ 18. There is therefore no basis to conclude that VAAL's center of main interests would be located in a jurisdiction other than England. The English Proceeding is therefore pending where VAAL has its center of main interests and constitutes a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code.

### iii.    This Case Was Commenced by VAAL's authorized "Foreign Representative"

14.    To be recognized as a foreign proceeding under section 1517(a) of the Bankruptcy Code, the foreign representative applying for recognition must be:

> a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."

11 U.S.C. § 101(24)

15.    The Foreign Representative in this case is an individual who has been (i) duly appointed by formal resolution of VAAL's board of directors (the **Board Resolution**) as foreign representative of the English Proceeding and (ii) authorized by the English Court to act as "foreign representative" pursuant to the Convening Order. Chapter 15 Petition at Exhibit A; Convening Order ¶ 14.[7] Accordingly, Shai Weiss is a "foreign representative" as defined in the Bankruptcy

---

[7]    *See Ad Hoc. Grp. of Noteholders v. Vitro, S.A.B. de C.V. (In re Vitro, S.A.B. de C.V.)*, 470 B.R. 408, 412 (N.D. Tex. 2012), *aff'd*, 701 F.3d 1031 (5th Cir. 2012), *cert. dismissed*, 569 U.S. 944 (2013) (recognizing that a board of directors may authorize a person to act as the company's foreign representative in a chapter 15 proceeding); *In re Compania Mexicana de Aviacion, S.A. de C.V.*, Case No. 10-14182 (MG) (Bankr. S.D.N.Y. Nov. 8, 2010) [Dkt. No. 261] (same). Section 1515(b) of the Bankruptcy Code specifically provides that in the absence of a "certified copy of the decision commencing such foreign proceeding and appointing the foreign representative" or "a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative," a chapter 15 petition may be accompanied

Code. *See* 11 U.S.C. § 1516(a) ("If the decision [commencing the foreign proceeding] . . . indicates

. . . that the person or body is a foreign representative, the court is entitled to so presume."); *In re*

*SphinX, Ltd.*, 351 B.R. 103, 116-17 (Bankr. S.D.N.Y. 2006), *aff'd, Krys v. Official Comm. of*

*Unsecured Creditors of Refco Inc.* (*In re SphinX, Ltd.*), 371 B.R. 10 (S.D.N.Y. 2007) (holding that

section 101(24) of the Bankruptcy Code was satisfied where foreign representatives submitted a

"copy of the Cayman Court's order appointing them to administer the [d]ebtors' winding up under

[Cayman law] and authorizing their commencement of these chapter 15 cases . . ."). The Foreign

Representative is therefore a proper and duly authorized "foreign representative" within the

meaning of section 101(24).

### iv.    *This Case Was Properly Commenced under Chapter 15 of the Bankruptcy Code*

16.    This chapter 15 case was duly and properly commenced as required by section 1504

of the Bankruptcy Code by filing a petition for recognition pursuant to section 1515(a) of the

Bankruptcy Code. Pursuant to section 1515(b) of the Bankruptcy Code, a petition for recognition

must be accompanied by one of the following:

i.    a certified copy of the decision commencing such foreign proceeding
and appointing the foreign representative;

ii.    certificate from the foreign court affirming the existence of such
foreign proceeding and of the appointment of the foreign
representative; or

iii.    in the absence of evidence referred to in paragraphs (1) and (2), any
other evidence acceptable to the court of the existence of such foreign
proceeding and of the appointment of the foreign representative.

17.    A copy of the Board Resolution authorizing commencement of this chapter 15 case

is attached to Chapter 15 Petition as Exhibit B. The Convening Order is a decision of the English

---

by "any other evidence acceptable to the court of the existence of such foreign proceeding and of the
appointment of the foreign representative." 11 U.S.C. § 1515(b).

Court formally commencing the English Proceeding and convening meetings of creditors and members for the purpose of voting on the Plan. Convening Order ¶ 1; Marshall Declaration ¶ 15.

18.    The Chapter 15 Petition was filed accompanied by all fees, documents and information required by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the **Bankruptcy Rules**), including (i) a corporate ownership statement containing the information required by Bankruptcy Rule 7007.1; (ii) a list containing (a) the names and addresses of all persons or bodies authorized to administer foreign proceedings of the Debtor,  and (b) all entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code; (iii) a statement identifying all foreign proceedings with respect to the Debtor that are known to the Foreign Representative; (iv) and a certified copy of the Convening Order. *See List Filed Pursuant to Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure*, filed contemporaneously herewith. *See also In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code."), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008).

19.    Having filed the above-referenced documents and because the Court is entitled to presume the authenticity of such documents filed in connection with the petition for recognition under section 1516(b) of the Bankruptcy Code, the requirements of section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4) have been met and this chapter 15 case was properly commenced. *See* 11 U.S.C. §§ 1504, 1509(a), 1515; Bankruptcy Rule 1007(a)(4).

> *v.*    ***The English Proceeding Should be Recognized as Foreign Main Proceeding***

20.    As demonstrated above, the English Proceeding is a "foreign main proceeding" under chapter 15 of the Bankruptcy Code because: (i) VAAL satisfies the general eligibility requirements to be a debtor under the Bankruptcy Code under Section 109(a) of the Bankruptcy

Code; (ii) the English Proceeding is a "foreign proceeding" and a "foreign main proceeding"; (iii) the Chapter 15 Petition was filed by the Foreign Representative as the duly appointed "foreign representative" of VAAL; and (iv) the filing complies with all relevant requirements of Bankruptcy Code and the Bankruptcy Rules.

## C.    Recognition and Enforcement of the Sanction Order and the Plan in the United States Pursuant to Section 1521 of the Bankruptcy Code Is Proper

21.    In connection with recognition of the English Proceeding as a "foreign main proceeding," the Foreign Representative further seeks, subject to the English Court's entry of the Sanction Order sanctioning the Plan, an order of the Court giving full force and effect to the Sanction Order and the Plan in the United States pursuant to Section 1521(a) of the Bankruptcy Code.

22.    Upon recognition of a foreign proceeding as a foreign main proceeding, certain provisions of the Bankruptcy Code are made applicable to a chapter 15 case as a matter of right pursuant to section 1520 of the Bankruptcy Code. In addition to these protections, a foreign representative may request additional "appropriate relief" pursuant to section 1521(a) of the Bankruptcy Code, including "any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a) [of the Bankruptcy Code]." 11 U.S.C. § 1521(a)(7). Section 1521(a) of the Bankruptcy Code authorizes the Court to grant "any appropriate relief" to a foreign representative "where necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors," provided that the interests of creditors and other interested entities are sufficiently protected. 11 U.S.C. §§ 1521(a), 1522(a). *See also Avanti*, 582 B.R. at 612 ("The discretion that is granted is exceedingly broad, since a court may grant any appropriate relief that would further the purposes of chapter 15 and protect the debtor's assets and the interests of creditors.") (internal citations omitted).

23.     The Court's authority to grant each form of relief requested pursuant to Section 1521 is subject to the same two overlapping conditions because section 1521(a) provides that any relief granted pursuant to Section 1521 must be "necessary to effectuate the purposes of [chapter 15] and to protect the assets of the debtor," and the Court must be satisfied that "the interests of creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a).

24.     A determination of sufficient protection "requires a balancing of the respective parties' interests." *In re AJW Offshore, Ltd.*, 488 B.R. 551, 559 (Bankr. E.D.N.Y. 2013) (citing *SNP Boat Serv. S.A. v. Hotel Le St. James*, 483 B.R. 776, 784 (S.D. Fla. 2012); *In re Qimonda AG Bankr. Litig.*, 433 B.R. 547, 556–58 (E.D. Va. 2010); *CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96, 108 (Bankr. S.D.N.Y. 2012)); *see also* 8 Richard Levin & Henry J. Sommer COLLIER ON BANKRUPTCY, ¶ 1522.01 (16th ed. 2018) ("The purpose of [Section 1522] is to ensure a balance between the relief that may be granted to the foreign representative and the interest of the persons potentially affected by such relief."). Courts have also explained "sufficient protection" as a limiting factor in assessing proposed relief under section 1521 as:

> embodying three basic principles: '[(i)] the just treatment of all holders of claims against the bankruptcy estate, [(ii)] the protection of U.S. claimants against prejudice and inconvenience in the processing of claims in the [foreign] proceeding, and [(iii)] the distribution of proceeds of the [foreign] estate substantially in accordance with the order prescribed by U.S. law.'

*In re ENNIA Caribe Holding N.V.*, No. 18-12908 (MG) 596 B.R. 316, 322 (Bankr. S.D.N.Y. Jan. 29, 2019) (quoting *In re Atlas Shipping A/S*, 404 B.R. 726, 740 (Bankr. S.D.N.Y. 2009) (quoting *In re Artimm, S.r.L.*, 335 B.R. 149, 160 (Bankr. C.D. Cal. 2005))).

25.     Here, both the three-factor *Atlas Shipping* test and the general balancing test favor granting Foreign Representative's requested relief.

14

### i.    *Just Treatment of All Holders of Claims Against or Interests in the Debtor's Property*

26.    The requirement to reasonably assure "just treatment of all holders of claims against or interests in the debtor's property" is satisfied where the foreign law provides a comprehensive procedure for the orderly resolution of claims and the equitable distribution of assets among all of the estate's creditors in one proceeding. *See*, *e.g.*, *In re Bd. of Dirs. of Telecom Arg., S.A.*, 528 F.3d 162, 170 (2d Cir. 2008) ("The 'just treatment' factor is satisfied upon a showing that the applicable law 'provides for a comprehensive procedure for the orderly and equitable distribution of [the debtor]'s assets among all of its creditors'") (citing *In re Treco*, 240 F.3d 148, 158 (2d Cir. 2001)); *In re Culmer*, 25 B.R. 621, 629 (Bankr. S.D.N.Y. 1982).

27.    Here, the English Proceeding clearly satisfies the "just treatment" requirement. As discussed in the Chapter 15 Petition, the Plan only pertains to certain arrangements with "Plan Creditors" as defined in the Plan, which includes parties to a revolving credit facility and certain operating lease arrangements, arrangements certain trade creditors, and arrangements with affiliates. Neither the Plan nor the Recapitalization, which will be implemented pursuant to authority granted to VAAL under the Plan,[8] restructure or amend debts and obligations owed to other stakeholders of VAAL, including creditors that are not Plan Creditors. Chapter 15 Petition ¶ 32. As to the Plan Creditors, the Plan will result in the same treatment for each Plan Creditor as will be received by other similarly situated Plan Creditors. *Id.*

---

[8]    After the Plan becomes effective, VAAL will enter into a "Recapitalisation Implementation Deed" on behalf of itself and each of the Plan Creditors pursuant to the authority granted to it under the Plan. A copy of the Recapitalisation Implementation Deed is attached as Part E to the Explanatory Statement. The Recapitalisation Implementation Deed will, once executed and dated, oblige the parties thereto to enter into documents necessary to effect amendments to their existing agreements with the Group. The effectiveness of such amendments would be subject to, among other conditions precedent, the entry of an order in this case giving full force and effect tot eh Plan in the United States. Chapter 15 Petition ¶ 39.

28.    Further, in order to sanction the Plan, VAAL must comply with all of the substantive and procedural requirements of Part 26A, including the requirement that at least one class of Plan Creditors must vote to accept the Plan at the relevant creditor meeting convened pursuant to the Convening Order. Marshall Declaration ¶¶ 17, 25(iii). In order for a class of Plan Creditors to accept the Plan, the Plan must be approved by Plan Creditors representing at least 75% in value of the claims held by such creditors present in person or by proxy and voting at the relevant meeting. *Id.* To the extent there are any dissenting classes of Plan Creditors, while the English Court may still sanction the Plan, to do so it must first conclude that any dissenting class would not be worse off than under the "relevant alternative"[9] and the Plan must have been approved by a class of Plan Creditors that would receive a payment, or have a "genuine economic interest", under such alternative. *Id.* ¶¶ 17-18.  The Plan also cannot be sanctioned by the English Court unless the English Court is satisfied, among other things, that the Plan is fair, taking into account the interests of creditors or members and the nature of the Plan's impact upon dissenting creditors or members (or dissenting classes of creditors), and whether each class was fairly represented by those attending the relevant Plan Meetings including that the statutory majority are acting in good faith and are not coercing the minority in order to promote interests adverse to those of the class whom they purport to represent. *Id.* ¶ 25(b). In addition, the English Court must also conclude that the classes of creditors and/or members voting on the Plan have been properly formed (in general, the stakeholders within a class must be similarly situated, i.e., their interests are not so dissimilar as to make it impossible to consult with a view to their common interest).

---

[9]    The "relevant alternative" under Part 26A is whatever the court considers would be most likely to occur in relation to the company if the restructuring were not sanctioned. Typically, the relevant alternative will be an insolvency proceeding under English law, such as a liquidation or administration of the company. Marshall Declaration ¶ 18. As a practical matter, this makes the "relevant alternative" test similar in material respects to the "best interests of creditors test" contained in section 1129(a)(7)(A) of the Bankruptcy Code.

*Id.* ¶ 15. As such, the Plan and Sanction Order, once entered, will be the result of a proceeding in which all Plan Creditors were treated fairly, justly, and in full compliance with English law as determined by the English Court in the exercise of its discretion and after hearing and ruling on any objections from parties in interest. While Part 26A is a recent addition to the law, as discussed above, proceedings under the Companies Act in connection with schemes under Part 26 are well-established and well-respected mechanisms to justly and fairly restructure all or certain of the obligations of cross-border enterprises such as VAAL, and the experience, integrity, and independence of the English Court is beyond reproach.

29.       Accordingly, the requirement of just treatment for holders of claims and interests in VAAL that are impacted by the Plan is plainly satisfied.

### ii.       *Protection of Claim Holders in the United States Against Prejudice and Inconvenience in the Processing of Claims in the Foreign Proceeding*

30.       The Plan addresses only the rights of the Plan Creditors under specific contractual arrangements of VAAL—there is no need for any Plan Creditor to file a claim in the English Proceeding to receive the same treatment as other similarly situated Plan Creditors with respect to their rights under the relevant agreements. Chapter 15 Petition ¶ 32. No creditor in the United States will be required to process a claim in English Proceeding and accordingly no creditor is inconvenienced thereby. In any event, all Plan Creditors have been or will be given adequate notice of the Plan, the meetings of creditors at which voting on the Plan will be conducted, and the Sanction Hearing. *Id.* ¶¶ 33-34. The process for participating in or objecting to the Plan is the same for creditors of VAAL located in the United States  as it is for any other creditor, wherever located in the world. Chapter 15 Petition ¶ 32. To the extent participating in or objecting to the Plan is analogous to filing a claim, this factor is satisfied.

17

### iii.    *Distribution of Proceeds Substantially in Accordance with the Bankruptcy Code*

31.    The third factor considers whether distribution of a foreign debtor's property will substantially accord with the order of distribution provided by the Bankruptcy Code. The "substantially in accordance" factor does not require that the foreign distribution be identical to United States bankruptcy law. *In re Ionica*, 241 B.R. 829, 836 (Bankr. S.D.N.Y. 1999) ("Section 304(c)(4) only requires that the foreign distribution scheme be 'substantially in accordance' with United States bankruptcy law; it does not have to mirror the United States distribution rules.") (citations omitted).[10]

32.    Similar to schemes of arrangement under Part 26, which have been routinely recognized and enforced by courts in this District, the Plan will provide VAAL the authority to modify or restructure certain specific contractual arrangements between VAAL and the Plan Creditors. This relief sought by VAAL through the English Court's sanction of the Plan is thus substantially similar to relief available to debtors through confirmation of a plan of reorganization under section 1129 of the Bankruptcy Code.

### iv.    *The General Balancing Test Weighs in Favor of Granting Relief*

33.    The Plan is an appropriate mechanism to achieve the important goal of achieving an equitable and orderly restructuring of the contractual arrangements between the Plan Creditors and VAAL. The requested relief, including enforcement of the Plan, is necessary to effectively utilize this mechanism. Further, VAAL must comply with all of the substantive and procedural requirements of Part 26A. Any objecting creditors whose objections are overruled by the English

---

[10]    The "substantially in accordance" factor is a direct lift from former section 304 of the Bankruptcy Code, which chapter 15 replaced in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Congress has directed courts to use case law interpreting former section 304 in interpreting current chapter 15 issues so long as it is not inconsistent with the statute. *See* H.R. Rep. No. 109-31, pt. 1, at 145 (2005).

Court will still receive the same treatment as other similarly situated creditors and will benefit from the procedural protections available in the English Proceeding, so such creditors' interests are protected consistent with English law and established norms of due process. Moreover, the vast majority of the agreements between the Plan Creditors and VAAL are governed by English law, and in all of the agreements VAAL is clearly identified as a company incorporated under the laws of England and Wales. As such, the Plan Creditors would have reasonably expected that VAAL could become subject to English proceedings under the Companies Act and had ample notice of the possibility of such a collective proceeding if VAAL encountered financial difficulties. Accordingly, balancing the interests of the relevant parties strongly supports the conclusion that the relevant parties in interest are sufficiently protected.

34.    Finally, the relief requested here clearly furthers the goals and purposes of chapter 15 itself. See 11 U.S.C. § 1501 (explaining that chapter 15's "objectives" include "cooperation between (A) courts of the United States . . . and (B) the courts and other competent authorities of foreign countries"). By ensuring that VAAL can effectuate the terms of the Plan once approved by the English Court, the relief requested "would assist in the efficient administration of this cross-border insolvency proceeding, and it would not harm the interests of the debtors or their creditors." *In re Grant Forest Prods.*, Inc., 440 B.R. 616, 621 (Bankr. D. Del. 2010).

35.    Accordingly, the Foreign Representative respectfully submits that enforcement of the Sanction Order and the Plan is necessary and appropriate.

**D.    Enforcement of the Plan Is Also Proper under Section 1507**

36.    The Court may also act under section 1507 of the Bankruptcy Code to provide "additional assistance" to foreign representatives, provided that such assistance is "consistent with the principles of comity" and cooperation with foreign courts. 11 U.S.C. § 1507; *see also Avanti*, 582 B.R. at 615; *Atlas Shipping*, 404 B.R. at 737–38; *Bear Stearns*, 389 B.R at 325, 333.

37.    In exercising discretion to grant relief under section 1507(a) of the Bankruptcy Code, courts are guided by the standards set forth in section 1507(b) of the Bankruptcy Code, which provide that:

> In determining whether to provide additional assistance under this title or under other laws of the United States, the court shall consider whether such additional assistance, consistent with the principles of comity, will reasonably assure—
>
> 1) just treatment of all holders of claims against or interests in the debtor's property;
>
> 2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;
>
> 3) prevention of preferential or fraudulent dispositions of property of the debtor;
>
> 4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and (5) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns; and
>
> 5) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

11 U.S.C. § 1507(b). Many of these same factors are also considered in connection with granting relief under section 1521 of the Bankruptcy Code.[11]

38.    Subsection 1507(b) is clear that the principles of comity are key to a court's decision whether to grant additional assistance. *See, e.g., In re Metcalfe & Mansfield Alt. Inv.*, 421 B.R. 685, 696 (Bankr. S.D.N.Y. 2010) ("Section 1507 directs the court to consider comity in granting additional assistance to the foreign representative."); *In re Atlas Shipping*, 404 B.R. at

---

[11]    Courts in this District and others have observed that "the interplay between the relief available under sections 1507 and 1521 is far from clear." *In re Avanti Commc'ns Grp. PLC*, 582 B.R. 603, 615–16 (Bankr. S.D.N.Y. 2018). In practice, relief is frequently available under both sections, and in either case "the principal question in determining whether to recognize and enforce" an order issued in a foreign proceeding "ultimately boils down to a question of the appropriateness of granting comity to the foreign court approval" of such order. *In re Agrokor d.d.*, 591 B.R. 163, 189 (Bankr. S.D.N.Y. 2018) (considering enforcement of Croatian restructuring plan and noting that "[a]s with section 1521, relief under section 1507 may include recognition and enforcement of a plan approved by a foreign court"). *See also In re Olinda Star Ltd.*, 614 B.R. 28 (Bankr. S.D.N.Y. 2020) (enforcing BVI scheme of arrangement under sections 1507 and 1521).

738 (noting that post-recognition relief is "largely discretionary and turns on subjective factors that embody principles of comity") (quoting *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333 (S.D.N.Y. 2008)). The general principles supporting granting comity in this case are discussed above. Beyond such general principles of comity, each of the listed considerations in subsection 1507(b) also favors discretionary relief.

39.     Considerations (1), (2), and (4) are essentially the same as the three factors in the *Atlas Shipping* test set forth above. Factor (5), provision of a "fresh start" does not apply here because VAAL is a business entity. *See In re Bd. of Dirs. of Telecom Arg.*, S.A., No. 05- 17811 (BRL), 2006 WL 686867, n.11 (Bankr. S.D.N.Y. Feb. 24, 2006); *In re Culmer*, 25 B.R. 621, 631 n.4 (Bankr. S.D.N.Y. 1982).

40.     The only remaining factor to be considered is therefore factor (3), "prevention of preferential or fraudulent dispositions of property of the debtor," which is satisfied here. Implementation of the Recapitalization, pursuant to the authority to be granted to VAAL under the Plan, will only occur after the Sanction Order is entered and delivered to the Registrar of Companies of England and Wales, which requires a determination by the English Court that the compromises and transactions contemplated by the Plan are in accordance with English law. Adherence to the restructuring plan procedures under Part 26A of the Companies Act, which is modeled on the well-recognized scheme of arrangement process under Part 26, and the supervision of the English Court is a sufficient safeguard to reasonably assure prevention of preferential or fraudulent dispositions of property of the debtor.

41.     Accordingly, the standards set forth in section 1507(b) all weigh in favor of granting enforcement of the Sanction Order and Plan.

E.      **Enforcement of the Plan is Consistent with Principles of Comity**

42.     Courts in this district have routinely held that recognizing and enforcing a foreign

plan and confirmation order falls within the scope of the relief available under section 1521 and

section 1507. *See*, *e.g.*, *In re U.S. Steel Canada Inc.*, 571 B.R. 600, 609 (Bankr. S.D.N.Y. 2017);

*In re Cell C Proprietary Ltd.*, 571 B.R. 542, 551 (Bankr. S.D.N.Y. 2017); *In re Rede Energia S.A.*,

515 B.R. 69 (Bankr. S.D.N.Y. 2014). Given that Part 26A of the Companies Act has only recently

become law, it appears that this case is the first instance of a foreign representative in a case under

chapter 15 seeking recognition and enforcement of a Part 26A restructuring plan. However, as

described in the Marshall Declaration and above, the provisions of part 26A were largely modeled

on those of Part 26 concerning schemes of arrangement under the Companies Act, and bankruptcy

courts in this district have routinely entered orders recognizing and enforcing Part 26 schemes of

arrangement—most recently, a bankruptcy court in this district has had occasion to explain in

detail why a Part 26 scheme of arrangement and associated sanction order may be properly be

recognized and enforced in the United States under this theory. *See Avanti*, 582 B.R. at 619.

43.     The decision of whether to grant appropriate relief or additional assistance by

enforcing a scheme and sanction order is "guided by principles of comity and cooperation with

foreign courts." *Avanti*, 582 B.R. at 616. The need to extend comity to foreign proceedings is

particularly salient with respect to proceedings such as the English Proceeding, which will

determine how the claims of the Plan Creditors will be dealt with in a single collective proceeding,

because "[t]he equitable and orderly distribution of a debtor's property requires assembling all

claims against the limited assets in a single proceeding" to bind all creditors and comprehensively

effectuate a plan of reorganization. *Atlas Shipping*, 404 B.R. at 737 (quoting *Victrix S.S. Co. v.

Salen Dry Cargo A.B.*, 825 F.2d 709, 713–14 (2d Cir. 1987)); *Canada S. Ry. Co. v. Gebhard*, 109

U.S. 527, 539 (1883) ("Unless all parties . . . can be bound by the arrangement . . . the scheme may

fail . . . . Under these circumstances, the true spirit of international comity requires that schemes

of this character, legalized at home, should be recognized . . . ."); *Victrix S.S. Co.*, 825 F.2d at 713-

14 ("The equitable and orderly distribution of a debtor's property requires assembling all claims

against the limited assets in a single proceeding; if all creditors could not be bound, a plan of

reorganization would fail.").

44.    Comity is particularly important in cases like this one notwithstanding the fact that

recognition of a foreign restructuring proceeding may implicate certain rights under US law. For

example, in *In re. Board. of Directors of Telecom Argentina, S.A.*, then-Second Circuit Judge

Sotomayor affirmed a bankruptcy court's order extending comity to Argentine insolvency

proceedings, finding that those proceedings did not violate US public policy considerations

manifest in the Trust Indenture Act (**TIA**). 528 F.3d 162, 165 (2d Cir. 2008). The Second Circuit

held that a bankruptcy court may grant enforcement of foreign proceedings that result in the

restructuring of TIA-qualified notes so long as recognition of those proceedings is otherwise valid

under then-section 304 of the Bankruptcy Code. Foreign proceedings can also modify payment

terms under an indenture notwithstanding noteholders' TIA rights. *See In re Bd. of Dirs. of*

*Multicanal S.A.*, 307 B.R. 384 (Bankr. S.D.N.Y. 2004). Citing prior Supreme Court precedent,

Judge Gropper rejected objections to enforcement made by certain noteholders:

> if foreign law can under certain circumstances trump the U.S. Constitution and
> preclude bondholders from enforcing their contractual rights, as *Gebhard* holds,
> there is no basis for adopting the principle espoused by [the noteholders], that
> foreign law can under no circumstances override § 316(b) of the Trust Indenture
> Act (except perhaps if the foreign law is identical in all respects to U.S. law). Nor
> can *Gebhard* be limited to the effect of a foreign proceeding on State rather than
> Federal rights. It is the seminal decision on granting comity to foreign insolvency
> proceedings.

*Id.* at 390.

45.     In that regard, the Supreme Court has held that a foreign judgment should not be

challenged in the United States if the foreign forum provides:

> a full and fair trial abroad before a court of competent jurisdiction, conducting the
> trial upon regular proceedings, after due citation or voluntary appearance of the
> defendant, and under a system of jurisprudence likely to secure an impartial
> administration of justice between the citizens of its own country and those of other
> countries, and there is nothing to show either prejudice in the court, or in the system
> of laws under which it was sitting . . . .

*Hilton v. Guyot*, 159 U.S. 113, 202–03 (1895); *Avanti*, 582 B.R. at 618–619 (holding that

"proceedings under UK law in the UK courts afford creditors a full and fair opportunity to be heard

in a manner consistent with US due process standards" and extending comity to a sanctioned

scheme that complied with applicable statutory requirements; fairly represented creditors in

classification; found the majority acted in a bona fide manner; was one that an intelligent and

honest person, acting in respect of his or her interests as a creditor, might reasonably approve; and

where jurisdiction was proper); *See also Society of Lloyd's v. Reinhart*, 402 F.3d 982, 994 (10th

Cir. 2005) ("[O]ur courts have long recognized courts of England are fair and neutral forums")

(quoting *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 958 (10th Cir. 1992)).

46.     The English Proceeding easily meets the standard for extending comity. The United

States and the United Kingdom share the same common law traditions and fundamental principles

of law. Moreover, in the English Proceeding creditors and members of VAAL have a full and fair

opportunity to vote on and be heard in connection with the Plan in a manner consistent with US

standards of due process. As discussed in detail above and in the Marshall Declaration, in order

for the Plan to be sanctioned by the English Court, VAAL must satisfy all of the procedural and

substantive requirements of the restructuring plan process under Part 26A, and all Plan Creditors

will have an opportunity to challenge, at the Sanction Hearing, the proposed compromises and

arrangements provided for in the Plan and the process and procedures in respect of the Plan. The

foregoing is consistent in all material respects with the rights and process in relation to the

confirmation of chapter 11 plans under the Bankruptcy Code. Accordingly, enforcing the Sanction

Order and the Plan as appropriate relief or additional assistance under section 1521 or 1507 is an

appropriate exercise of comity.

**F.    The Relief Requested by the Chapter 15 Petition Is Consistent with United States
       Public Policy and Policy Behind the Bankruptcy Code**

47.    The purpose of chapter 15 is set forth in section 1501 of the Bankruptcy Code and

includes:

> (i) cooperation between (a) courts of the United States, the United States Trustee,
> trustees, examiners, debtors, and debtors in possession; and (b) the courts and other
> competent authorities of foreign countries involved in cross-border insolvency
> cases; (ii) greater legal certainty for trade and investment; (iii) fair and efficient
> administration of cross-border insolvencies that protects the interests of all
> creditors, and other interested entities, including the debtor; (iv) protection and
> maximization of the value of the debtor's assets; and (v) facilitation of the rescue
> of financially troubled businesses, thereby protecting investment and preserving
> employment.

11 U.S.C. § 1501. Recognition of the English Proceeding as a "foreign main proceeding" and

recognition and enforcement of the Sanction Order and the Plan in the United States comports with

all of these objectives.

48.    While section 1506 of the Bankruptcy Code provides that nothing in chapter 15

shall prevent the Court from refusing to take an action otherwise required therein if such action

would be manifestly contrary to the public policy of the United States, the public policy exception

is narrowly construed. *See*, *e.g.*, *RSM Richter Inc. v. Aguilar (In re Ephedra Prods. Liab. Litig.)*,

349 B.R. 333, 336 (S.D.N.Y. 2006); *In re Sino-Forest*, 501 B.R.655, 665 (S.D.N.Y. 2013);

*Metcalfe*, 421 B.R. at 697; *In re Vitro S.A.B. de CV*, 701 F.3d 1036, 1069 (5th Cir. 2012).

Moreover, the public policy exception must be viewed in light of one of the fundamental goals of

the Bankruptcy Code—the centralization of disputes involving the debtor. *See*, *e.g.*, *In re*

*Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990) ("The Bankruptcy Code provides for

centralized jurisdiction and administration of the debtor, its estate and its reorganization in the

Bankruptcy Court . . . .") (internal citations and quotation marks omitted). Indeed, as some courts

have noted:

> American courts have long recognized the need to extend comity to foreign
> bankruptcy proceedings because the equitable and orderly distribution of a debtor's
> property requires assembling all claims against the limited assets in a single
> proceeding; if all creditors could not be bound, a plan of reorganization would fail.

*Atlas Shipping*, 404 B.R. at 733 (internal quotation marks omitted) (citing *Victrix*, 825 F.2d at 713–

14); *see also JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 424

(2d Cir. 2005) ("We have repeatedly held that U.S. courts should ordinarily decline to adjudicate

creditor claims that are the subject of a foreign bankruptcy proceeding.").

49.    Recognition of the English Proceeding as a "foreign main proceeding" and

recognition and enforcement of the Sanction Order and Plan will enable VAAL to fully implement

the Recapitalization and enable VAAL's business to continue going forward.

50.    Recognition and enforcement would also promote the fair and efficient

administration of a cross-border reorganization procedure that protects the interests of all

stakeholders and interested parties. By recognizing the English Proceeding and granting the other

relief requested in the Chapter 15 Petition, the process of administering VAAL's debts and

obligations to Plan Creditors would be centralized in England, which is a fundamental goal of the

Bankruptcy Code. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 922 F.2d at 989; *Cornfeld v. Investors

Overseas Servs., Ltd.,* 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979) (noting that "the firm policy of

American courts is the staying of actions against a corporation which is the subject of a bankruptcy

proceeding in another jurisdiction"). Such debts and obligations would be restructured under the

Plan that comports with English law, which is similar to comparable United States laws, and any

disputes would be subject to the uniform jurisdiction of one tribunal—the English Court. Recognition and enforcement will enable the orderly administration of VAAL's restructuring and foster cooperation between courts in England and the United States. Such orderly administration is demonstrably consistent with the public policy of the United States and the Bankruptcy Code. If the Plan sanctioned by the English Court is not recognized and enforced in the United States, the uniform and orderly process of the English Proceeding would be jeopardized. *See, e.g., Canada S.Ry. Co. v. Gebhard*, 109 U.S. 527, 539 (1883)("[u]nless all parties in interest, wherever they reside, can be bound by the arrangement which is sought to have legalized, the scheme will fail. All home creditors can be bound. What is needed is to bind those who are abroad. Under these circumstances the true spirit of international comity requires that schemes of this character, legalized at home, should be recognized in other countries.").

51.     Further, if the Court does not recognize and enforce the Plan, then the English Proceeding will face grave legal uncertainty and the Plan, and therefore the Recapitalization, may not succeed. Additionally, failure to enjoin Plan Creditors in the United States may result in unnecessary enforcement costs or the piecemeal disposition of assets to the detriment of VAAL and its various stakeholders. The purpose of chapter 15 is to prevent such harms. *See* 11 U.S.C. § 1501(a) (noting that, among other objectives described herein, chapter 15 facilitates "the rescue of financially troubled business" and provides for the "fair and efficient administration of cross-border insolvencies").

52.     Avoiding such potential adverse outcomes through the formal recognition of the English Proceeding and recognition and enforcement of Sanction Order and the Plan in the United States accomplishes the principal objectives Congress articulated when it enacted chapter 15 of the Bankruptcy Code and otherwise comports with US public policy.

## **CONCLUSION**

WHEREFORE, the Foreign Representative respectfully requests that this Court grant the relief requested in the Chapter 15 Petition and such other and further relief as may be just and proper.

Dated: New York, New York
　　　August 4, 2020

**ALLEN & OVERY LLP**

By: /s/ Ken Coleman
Ken Coleman
Jonathan Cho
Joseph Badtke-Berkow
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399
ken.coleman@allenovery.com
jonathan.cho@allenovery.com
joseph.badtke-berkow@allenovery.com

*Counsel to Shai Weiss, as the Foreign Representative of Virgin Atlantic Airways Limited*